Thank you. Good morning, Your Honor. My name is Tom Kasparian, Cosin O'Connor, appearing on behalf of the Appellant Isaacson. May it please the Court, I'd like to reserve five minutes for rebuttal. I'm going to use first names only regarding some of the witnesses in the case because of the egregious nature of the sex abuse case that's underlying this case. No disrespect to these witnesses is intended. This is merely to anonymize their identities. That's fine. Your Honor, the primary error in the decision below is its refusal to accept the fact that the clergy abuse case clients clearly disputed that Appellant was entitled to 60% of the settlement as his fee payment. The court below could not seriously dispute that fact and instead improperly relied on two different legal principles, judicial estoppel. Counsel, can I just ask you about a threshold issue because I am interested in all those other issues. But is it correct that even assuming that you're right about that, that they disputed and I think it was like that your argument is that they said 40 and he said 60 and another said 50 and he said 60%. As to the amounts that weren't disputed, you know, the 40% and the 50% and then for I think the other two clients the entirety because I'm not sure that there was ever an argument. So am I right that even if you're right and we agreed with all of your arguments that still most of this money should have been allocated to 2007 and if I'm not, why not? Because that would have been so difficult, essentially impossible to do. You know, it wasn't just a dispute regarding 40%, 50% and again, the clients were kind of all over the map on that. They also disputed very significant fees that have been advanced by Appellant and to which he was. So you're okay, just to make sure I'm clear. So for the two, I think they're brothers that disputed that you argue disputed, you're saying they just I thought you were saying they disputed 40 and 50%. Are you saying to us today that they disputed the entirety of the amount in 2007? They disputed in addition to the proper percentage, the amount of expenses that they would need to reimburse Appellant and those are very. But even then, like it would be. I mean, wouldn't you take like the maximum amount of those expenses? And I think the expenses were hundreds of thousands, not millions of dollars, if I remember right. What an attorney needs to do, of course, is get the client's agreement that some amount could be distributed to him. There's some amount that's uncontested, but none of these or at least certainly not the two brothers would ever agree to do so. They tried repeatedly and they had many, many discussions, but Appellant couldn't just unilaterally fix his fee and say, well, I figure that the floor here must be at least. Thirty percent will make up a number that would be safe in your scenario. The appellant isn't really permitted to do that. Appellant didn't really have enough definition to be able to do that. And you had clients who were really challenging the entire basis of the thing. So just to be clear, because I don't want to spend all your time on this, but just to be clear, your position then is, you know, 50 percent, right, that your argument is about some margin, you know, 50 versus 60, and maybe you're arguing about a couple, you know, a little bit of money that's fees or something, but that's enough to make it so that the entire amount should not, none of that amount should be reported. That must be your position then. That is my position in this case because of several factors. That's your position for not just the two brothers where I think, but that's the position for the other two because of the cost issue. Is that right? Well, regarding the other two, I mean, honestly, there was not much of it. It wasn't really a matter of a dispute with Victor, but a matter of settling up, figuring out what the proper expenses were. And as we know, you know, by January, by the end of January of 2008, Appellant was able to settle up with Victor and did give Victor his share, and that was done. In fact, in the middle of December, Appellant thought that he had an agreement with Victor and liquidated some of the bonds to be able to pay Victor, and then it turned out that they actually needed a few more weeks. So there was a period of, it was a relatively short period of time because it was a relatively small, I don't want to even want to call it a dispute, but they needed to settle up. And again, you know, Appellant needed Victor's complete agreement that this is the amount. Okay. I think I have your argument. I don't want to suck up all your time on that one issue, and that's my call. But let me ask you now, now that I understand your position on that point. There's a fact here that I find very troublesome with respect to your argument, which is that in December of 2017, contrary to the notion that we need to keep all this money and not until the fee disputes are settled and figure out who's owed what, your client sells a bunch of money, directs a bunch of transactions out of this account. And so he's exercising some level of control and dominion over these funds that you now say, well, they couldn't have been income yet because he was still in a dispute with the other folks. Now, I know the tax court didn't rely on that theory, but the government does. And so I'm having, so could you respond to that? Because to me, the notion that your client treated the account as if it was his in a significant way, selling what, almost $2 million of securities in December of 2017, doesn't that establish that this was income? It doesn't, Your Honor, because those, first of all, those funds were not withdrawn at all. Appellant exercised dominion and control over them on behalf of his clients. So as I was saying before, Appellant believed that he was very close to settling up with Victor and so converted some of that money into cash so he could then pay Victor. When there wasn't an agreement, Victor wanted the money put right back in the securities along with everybody else's. Well, let's back up a little bit. The cash flows into the account, correct, from the settlement? I'm sorry. On December 17th, the money is in the account. Right. It is in these bonds. Who invests the money into bonds? UBS did, contrary to earlier instructions of Appellant. But once it was in there, then Appellant and his clients immediately wanted to meet with UBS and learn what is this and try to get a prospectus. In fact, there was that meeting that UBS stalled for a while until February or March of the following year. So, Counsel, this just occurred to me, I guess. So your position is that he put the money in this account and UBS just dumped it into these bonds. And I understand that's your position. But it is a little weird that just a few weeks later he says, some of that money that I didn't want you to put into bonds, would you take some of it out, but not all of it out, in order to create liquidity, which I think your position is that he was doing that for his clients. I'm not exactly clear. Maybe you can help me understand why that would help his clients have liquidity as opposed to himself having liquidity. But then he quickly told them to put it back into the bonds, even though supposedly your position was he never wanted this money in bonds in the first place. He never wanted the money in the bonds in the first place. But the fact is, it was. It was put immediately by UBS into the bonds. Once that happened, then Mr. Franklin at UBS, who had worked with Mr. Isaacson for 25 years, assured him that these were AAA secured, saved his treasury bonds. And so Appellant and his clients then began asking questions and asking for prospectus and trying to learn more about it, instead of immediately just converting it all to cash. They were willing to listen to whether or not the bonds should remain. UBS was stalling. Now, regarding your question about converting some of it into cash, again, that was in order to pay Victor the money, his portion of the settlement agreement. And then when there wasn't a settling with Victor, it got quickly put back, because at that point the clients wanted the money to stay where it was, status, as it was, until they could meet with UBS. What is it that you put our money into? Counsel, you're making a factual argument. The tax court, not the district court, the tax court in this case I think found as a matter of fact that your client treated the funds in the UBS account during 2017 as his own. Are you saying there's no basis for that finding? Or that it cuts against the weight of the evidence? What's your argument with respect to that finding? There is no basis for that finding.  So we review that finding to see whether any reasonable find or effect could arrive at it, correct? Yes, that is correct, Your Honor. And it is insufficient, the fact that some of the bonds were converted to cash and then the very next day put right back in. Remember, Appellant did not make any use of those funds. Appellant did not withdraw those funds. He did not treat those funds as his own. And there is no evidence that the court could rely on that would dispute that Appellant was, yes, exercising the dominion and control of the funds, as any attorney does in a trust account, but he was doing it on behalf of his clients. We took you off track at the very beginning of the argument, and you were just about to tell us why the judicial estoppel ruling below was incorrect in your view, and you've now got about three and a half minutes left. So let me give you an unobstructed track to make that argument. Thank you, Your Honor. I appreciate that very much. Look, we all agree that once we accept, and I realize that the government doesn't, but once we accept that there is a dispute that Appellant cannot touch that money and Appellant has not received that money, he can't unilaterally fix his fee. So that's not a disputed issue. But what's disputed was the court then, in order to find judicial estoppel, because the court could not and did not deny that there really was a dispute, the court went through a number of instances, most of which I won't repeat here. They're addressed in the brief. But the court keeps conflating the idea that the clients were pleased with Appellant Services and thought he had done a very good job with whether or not there was any dispute as to what his proper fee was. The court makes an egregious error in just simply misquoting. You can get by if it just made a regular error. It doesn't have to be egregious. The court made a regular error. I'm sorry, but to my client, it's particularly egregious because, of course, this is how the whole decision hinges. The court claims that Appellant convinced a tribunal that there was never any fee dispute between him and his clients and then took a contrary position later. And that's just not true. That's actually kind of important, counsel, because as I recall, even your argument now is that the fee was disputed all the way through, I think, to 2009. In theory, like, all you would need to do is show that the fee was disputed in 2007, just for a couple of months. But your argument was that the fee's been disputed all the way until 2009. That's a harder, there seems to be a lot more evidence that that's inconsistent with what you told other courts. In other words, it seems like you were telling other courts in 2008 that, no, it's all good, we want to get this money out and it's all, you know, there's no disagreement and everything's going well. So is that not enough for judicial estoppel, that you told another court in 2008 that we don't have a dispute, but you were telling the tax court that you had a dispute all the way until 2009? Can't the court look at that and say, so I'm not going to buy your argument that you didn't have a dispute during that period because you told another court something different? In other words, you want to focus now on the 2007 period, and I understand it. But the inconsistency that the tax court found, I think, was related to what you said about 2008, I think, as I read it. You are correct, although it's really 2009 by the time the court points to a hearing in March 2009. But the premise of your question, Justice VanJay, unfortunately is incorrect, and it's the mistake that the court repeatedly makes, that the court misrepresents the evidence. We can go back and look. At no time did appellant ever tell a court that there was no fee dispute between him and his client. So that's important. You're almost out of time, but that's what I want to make sure, is that if we disagree with that, if I was to disagree with that and say, no, I think that there's enough evidence to support that there was a dispute, that you had told or your client had told another court that there was not a dispute in 2008, then is that sufficient to uphold the judicial estoppel decision? Do we have to find that there was actually evidence of a dispute in 2007? Well, legally, absolutely. Now, I'll concede that behavior that occurs in 2009, a court can look at behavior to judge whether or not there ever was a fee dispute. So, you know, I would disagree with opposing counsel's argument that we can look at two of these other periods. But the real question is, did appellant ever represent to a court that in 2007 there was never a fee dispute with the court? That is still the test, and we're only talking about a period of 28 days in 2007. It's a very small window. The money hits the account, and the clients and appellant are trying to figure out what this product is that UBS has put it in. They're trying to settle up with expenses with Victor, but, you know, and then they're having a dispute with the other clients. Counsel, we've taken you over, and I think you've answered Judge Van Dyke's question. We'll give you a couple minutes for rebuttal at the end, and we'll move to the commissioner's argument now. And maybe if I can set something up for you, counsel. You're still on mute, government counsel. It's a variant of the question Judge Van Dyke just asked. On judicial estoppel, what I see are plenty of representations that by 2008 there was no fee dispute. What I'm not sure is I see any representation made either in the superior court or in the arbitration proceedings. And let's put aside for a moment whether arbitration can give rise to judicial estoppel. I'm not sure I see a representation by anybody that there was no fee dispute in 2007. So can you address that and tell me what the facts are and whether or not that has some legal significance? Your question is directed to Mr. Isakson's representations to the Los Angeles Superior Court, if I understand correctly. Right. And that representation was in a declaration dated in 2008, which said this money belongs to him and this money belongs to us, or something like that. But it didn't say there wasn't a dispute in 2007 about who was entitled to what. So how do I get to judicial estoppel from that declaration? Well, Mr. Isakson's representation that there was no dispute in 2008, that his fee was fixed at 60 percent. Yes, it does tend to show that there was no dispute in 2007. Well, why? Why? All I know is that by the time, I think it was Victor who did this declaration, but it really doesn't matter which client, he submitted a declaration that said we don't have a dispute about who owns what. And does that stop Mr. Isakson from arguing that we had a dispute prior to that, but we no longer had one at this point? Yes, because if you look at the text of those declarations, it lays out a chronology. Those clients said, well, I instructed Mr. Isakson to keep my money for 90 to 120 days while he does this extra research about my disability benefits, et cetera. Nowhere in there is there any mention of a dispute. There was no dispute. Well, there may be. There may be. My concern is this. I'm sure these declarations are evidence supporting your position that there was no dispute at the time, but whether they stop Mr. Isakson from arguing that there was a dispute at the time is really a separate matter. And what I'm trying to find is something in these declarations that's inconsistent, that directly contradicts his notion that there was a dispute in 2007. And I don't see it. Am I missing something in them? Let me take a look at the declarations. I just don't see any of them addressing, directly addressing the issue of whether there was. And I think we've all read them. We've read them, and I don't think there is either. So the question, counsel, if you don't mind, so the question that I think I tried to probably not very well ask your opponent, but if it's true, as it appears to me might be the case, that Mr. Isaacson's defense was, no, no, I had a fee dispute. I had a fee dispute clear into 2009 with my clients. And then there is evidence in the record that, no, no, he had told another tribunal that he didn't have a fee dispute in 2008, but not 2007, as Judge Hurwitz said. What do we do with that? Because it does seem like that other, you know, let's assume for the sake of argument that that other, what he said to the other tribunal is inconsistent with what he was saying to the tax court, that was that he had a fee clear until 2008. But the inconsistency, while it seems to undercut his argument that he had a fee dispute until 2008, it doesn't go directly to whether he had a fee dispute in 2007. Is that, I don't know what we do with that for purposes of judicial estoppel. If we find judicial estoppel, does that knock out all of his testimony going so that he basically, you know, in other words, if he had come into court and said, I didn't have a fee dispute in 2007, then that evidence wouldn't have been inconsistent. But because he came into court and said, I didn't have a fee, I had a fee dispute all the way until 2009, then that makes the evidence inconsistent. And what do we do with, like, if he tries to make an argument bigger than he needed to make and it's inconsistent with another tribunal, what do you do with that? Because Mr. Isakson at the tax court, he actually said that he had a fee dispute from 2003 all the way through 2012, 2013. And that is too big of an argument. And when you look at these declarations that were signed in 2008, his representations to the Los Angeles Superior Court in 2009, that falls within that period. So there is a clear consistency there. Mr. Isakson's argument, his testimony, rather, is not that he only had a dispute in 2007. He said four times, though, that I could count in the transcript, that his fee dispute spanned from 2003 through 2012 or 2013. Can I ask you a question about the topic I raised with your friend at the beginning? The tax court didn't seem to rely on this, but there's a general principle that money is income in the year when it's received, and it's the burden on the taxpayer at that point to demonstrate for some reason that it's not. And you argue that that principle ought to control this case, but the tax court didn't really get to it, as close as I could tell. Should we address that in the first instance or send it back to the tax court to address your argument? Yeah, so the tax court didn't need to reach what is right. It found on other grounds, but let's assume we don't agree on those other grounds just for purposes of this question. What do we do with this alternative argument? Is it one that we can address, or should we send it back to the tax court to address it? Well, this court can affirm on any grounds that it's supported by the record, but that claim of right theory actually has significant overlap with the tax court control, which is the tax court's approach, rather, which was in answer to Mr. Isaacson's argument. And the crux of that commonality within those two, I would argue, one, theories is that dominion and control of the taxpayer, his behavior with respect to the money, his representations, and that is really the ball that we should keep our eyes on. If you get the economic benefits of the money in that year, you should be taxed in that year. It's really that simple, no matter what you call that particular theory. So, yes, this court can affirm on the claim of right theory or on the approach that the tax court took because it's really the same idea, dominion and control. If I go back to what the tax court actually said, it seemed the tax court seemed to think that violation of a state ethics rule, that if Mr. Isaacson was treating his money as his own and it wasn't, he was violating a state ethics rule, that that somehow demonstrated that it was income. And I'm having some trouble in my own mind getting the linkage between an ethics rule and tax law. So would you help me out on that? Let's assume that he did violate the California ethics rules in 2007, that his money was still disputed. Nonetheless, he treated it as his own. Why would that fact demonstrate that it was income? Yes, I understand your honest trouble because the ethics rule is really a smokescreen. It has nothing to do with anything that we need to do here in our analysis. It's just that Mr. Isaacson's conduct, his dominion and control of the money also happened to violate the state ethics rule. So the state ethics rule is irrelevant in your view? In our analysis, if we lived in a world where there are no state ethics rules, Mr. Isaacson would still be taxable under federal tax law because he had the economic benefit of the money in December 2007. And he kept on representing to third parties that he had earned 60 percent and that was fixed. So this takes us back to the judicial estoppel issue. And I just want to try to work this through in my own mind and see if you can help me with it. I think the law is that, you know, you're assumed to have control of money as it comes in, but you can prove that it's not yours. It's not income. And he says it's not income because there was a fee dispute. Now, I don't think he's a stop from arguing there was a fee dispute in 2007 simply because there wasn't one by the beginning of 2008. But it certainly undercuts his argument. But is that what the district court or the tax court actually held? Or am I now making up a ruling that the tax court didn't actually reach? With regard to judicial estoppel, the tax court held that because he had told the Los Angeles Superior Court that there was no dispute, he cannot now take the opposite position and say that there was a dispute. There had always been a dispute. That was how the tax court found Mr. Isaacson's testimony, which was consistent with what he said. So this is in response to Judge Van Dyck's question. You view his testimony as sort of inseparable as to years, that his testimony in the tax court was there was a dispute beginning in much earlier than 2007. And it didn't resolve until later. And I take it your friend is focusing on the year 2007 and saying, well, we never submitted any. Nobody ever submitted anything saying there wasn't a dispute in 2007. It may undercut my testimony that it was a continuing dispute, but that's not estoppel. That's just evidentiary. Right. Mr. Isaacson's position is that it was from 2003 to 2012, 2013. And if I could, I would love to clarify some of the factual issues that the panel was focusing on with the accountants. As far as dominion and control, even in 2007, in November, Mr. Isaacson had one of his clients, Steve, sign off on both his expenses and his 60 percent fee. About the selling and buying of the almost two million of the securities, Mr. Isaacson had not raised any reason, client-related reason, why he did that. And the tax court found that it was for personal liquidity reasons. He also gifted interest that was earned in part on the settlement funds to a friend. And as far as the settlement with Victor, that was a separate transaction. In January, actually, 2008, he transferred $1.3 million out of that account. He used about $650,000 to pay Victor. The rest of it, at least part of it, a couple of hundred thousand of it, went to him in January and February. And then, of course, he told UBS that in April that he was entitled to 60 percent. So that really is sufficient to affirm on the tax deficiency part of the case. Going on to the fraud penalty, there was no clear error in the tax court's finding. Counsel? Counsel, can I interrupt for a second? You earlier said that we can affirm on any ground in the record, which is normally the case with, you know, reviewing like an Article III court. But a tax court isn't an Article III court. And I'm just trying to remember now. I think I was assuming that we could affirm on any ground in the record, but is that – do we have precedent saying that? And what is it? A court of appeals reviews tax court's decisions on the same grounds at the bench trial in front of the district court. That is 7481 of the tax code, Section 7481 or 8283. I don't remember for sure, but that's one of them. So that's statutory. Okay. I'm sorry. Continue. I just – thank you. Thank you for that. So just to highlight a few facts on the fraud front. First, Mr. Isakson omitted the 12.75 settlement deposit from both his law firm accounts and his client trust fund accounts. When he finally reported part of his fee on his 2009 returns, he reported them wrongly, admittedly wrongly as capital gains, resulting in low tax rates, the absence of self-employment tax, and with numbers that he also admitted had no basis in the record. The tax court found that his explanations for not reporting in 2007 were implausible and inconsistent. And he filed 2005 and 2009 returns that were different from what he filed with UBS. And then finally, he conceded in these proceedings below that his 2008 understatement of income was also fraudulent. So unless the panel has further questions, to sum up, Mr. Isakson received his fee in 2007. He treated it like his fee in 2007, and it should be taxed in 2007. And his decision to not report it in 2007 was fraudulent. For those reasons, we ask the court to refer. Thank you. Thank you, counsel. Let's put two minutes on the clock for Mr. Kasparian, and you can proceed. You're muted. Thank you, Your Honor. It's very important that we get the facts absolutely correct here regarding what appellant represented to the L.A. Superior Court in March 2009. You can go back and look at the transcripts of that. Appellant never represented to that court that there was no fee dispute with his clients. He represented to the court that his clients wanted the money released to him. That was 100% true. He told the court that Sal's estate had no dispute with the amount at that time. But at no point did appellant make any representation to the court that there wasn't even still an ongoing dispute. By March 2009, I don't want to say it had largely been resolved, but many issues had. In fact, the final release and hold harmless agreement that appellant's client signed was not until March of 2012. So opposing counsel is correct that, in fact, this dispute did go on far beyond. But by March 2009, there was enough comfort level that appellant's clients, and as appellant represented to the L.A. Superior Court, wished these funds that were being interplayed because of some other reason and incorrect claims to be released to them so that they could then settle up. But at no point did appellant ever represent to that court that there had never been a dispute. And again, certainly not in December of 2007, the only relevant time period. Remember, judicial estoppel must be exercised with caution. Its whole principle is to ensure the integrity of the court. And here we're left with completely differently from the Marilyn Monroe decision and some other ones regarding judicial estoppel. This is not a case where a court said, I'm not going to listen to the evidence or look at the facts. The court recognized and explicitly found that there was, in fact, a dispute. And then the court invokes this principle incorrectly to then ignore that fact. So we've got a decision from the trial court that itself really treats the dispute as Schrodinger's cat. And that's not proper where judicial estoppel is a very high bar. Thank you, counsel. Thank both sides for their briefing and arguments in this case. And this case will be submitted.
judges: HURWITZ, VANDYKE, Ericksen